[Civ. No. 4712. First Appellate District, Division One.—January 7, 1924.]

## S. L. JONES & COMPANY (a Corporation), Respondent, v. JAMES C. DAVIS, as Agent, etc., et al., Appellants.

[1] COMMON CARRIERS—LOSS OF GOODS—NOTICE OF CLAIM—SUFFICIENCY OF LETTER—ESTOPPEL.—In an action for damages for loss of goods shipped by freight, where it appears from the evidence that a letter written by plaintiff to defendants, notifying them of the nondelivery of the goods, was at all times treated and acted upon by defendants as a sufficient notice of claim, and a full compliance with the bill of lading in that respect, the defendants are estopped by their acts and acquiescence from asserting the insufficiency thereof as a claim.

[2] ID.—STATUTE OF LIMITATIONS—WAIVER—FORBEARANCE TO SUE—ESTOPPEL.—The statute of limitations may be waived, and an agreement to waive it is not against public policy; and when

---

1. Sufficiency of compliance with stipulation requiring notice of claim for damages to shipment, note, 1 A. L. R. 900.

the creditor forbears to sue, upon the written request of the debtor, the debtor will be estopped to plead the statute.

[3] ID.—WAIVER OF STATUTE OF LIMITATIONS—RECORD—FINDING.— In an action against a common carrier for damages for loss of goods shipped by freight, where counsel for plaintiff directs the trial court's attention to defendans' request for indulgence and states that he will cite authorities to the effect that the statute "of limitations was thereby waived, and counsel for defendants states that he is satisfied opposing counsel is right and that defendants are not in a position to plead the statute of limitations, and he further states that the "second defense, the one with reference to the action not being brought in time, is expressly waived," the trial court is justified in finding that the defense of the statute of limitations was abandoned.

[4] ID.—PARTIES—MISJOINDER OF RAILROAD COMPANY—WAIVER OF OBJECTION.—In an action against a railroad company and the agent appointed by the President of the United States under the "Transportation Act of 1920" for damages for loss of goods shipped by freight, if the objection that the railroad company was not a proper party defendant was not raised by demurrer or answer, or by motion to dismiss, the point was waived.

[5] ID. — STIPULATION — EVIDENCE — JUDGMENT. — In this action for damages for loss of goods shipped by freight, the defendants having stipulated that in consideration of the indulgence and forbearance that was given them by plaintiff they promised to pay plaintiff's loss upon concluding such investigation, if said goods could not be found, this promise in itself was sufficient under the evidence in the case to sustain the judgment in favor of plaintiff.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ford & Johnson for Appellants.

Powell & Dow for Respondent.

SHORT, J., *pro tem.*—This is an action by a shipper against the carrier to recover for the total loss of a ship-

---

4. Questions relating to federal control of railroad companies, notes, 4 A. L. R. 1680; 8 A. L. R. 969; 10 A. L. R. 956; 11 A. L. R. 1450; 14 A. L. R. 234; 19 A. L. R. 678.

ment of four bales of goatskins, the goods having disappeared after their delivery to the carrier for carriage from San Francisco to Wilmington, Delaware. Judgment was given in favor of the plaintiff for the admitted value of the goods. The appeal is by the defendants.

The undisputed facts of the case as shown by the evidence and stipulation of facts, signed by counsel for the respective parties, are as follows:

That on the fifth day of December, 1917, the plaintiff was the owner of four (4) bales of goatskins, each bale consisting of five hundred pieces, and that the plaintiff ever since has been, and is now, the owner thereof. That on the last-mentioned date, the plaintiff delivered the said bales to said defendant Southern Pacific Company at San Francisco, California, and the said company then and there accepted the same from the plaintiff for safe carriage by said railroad company for hire on its said railroad, and connecting rail carriers, from San Francisco to Wilmington, state of Delaware, and for delivery to plaintiff's order at the last-named place. That the said railroad company thereupon loaded the said bales in a car furnished by it for that purpose, and proceeded with the said carriage thereof. That upon the said delivery to it of said bales the defendant railroad company issued and delivered to the plaintiff its railroad straight bill of lading No. 13945, consisting of an acknowledgment of the receipt by it of said bales, and a contract to carry and deliver the same as aforesaid, which bill of lading contains the following provisions:

"Except where the loss, damage or injury complained of is due to delay or damage while being loaded or unloaded or damaged in transit by carelessness or negligence as conditions precedent to recovery, claims must be made in writing to the originating or delivering carrier within six months after delivery of the property; or in case of failure to make delivery then within six months after a reasonable time for delivery has elapsed.

"And suits for loss, damage or delay shall be instituted only within two years and one day after delivery of the property or in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed."

That the defendant railroad company did not safely carry or deliver the said bales, but wrongfully and negligently failed so to do, in this, that it failed and refused, and has ever since failed and refused, to deliver to plaintiff, or to plaintiff's order, the said bales, or any part thereof, and that neither the whole nor any part of said bales has ever been delivered to the plaintiff or to plaintiff's order, though frequently demanded by the plaintiff from the said defendants, their agents and representatives.

That owing to the congested condition of the freight traffic then existing between San Francisco and Wilmington on the railroad lines of the defendant railroad company and its connecting carriers, and owing to the fact that the said goods had gone astray during said carriage, ninety days from and after December 5, 1917, was a reasonable time for the delivery of said bales by said carrier to their said destination, and that the reasonable time for the said delivery thereof expired on March 5, 1918.

That within six months after the said reasonable time had elapsed for the delivery of said bales by said carrier at destination, to wit, on August 7, 1918, the plaintiff notified said railroad company and said United States Railroad Administration, in writing, of the said failure on the part of said carrier to deliver the said goods at destination, which said notice was as follows:

"San Francisco, Cal.,
"August 7, 1918.

"Southern Pacific Company
    "S. P. Building
        "Market Street
            "San Francisco, California
"Gentlemen:

"Between the fifth and eighth of Dec., 1917, we shipped via Southern Pacific four (4) bales Goat Skins to F. Blumenthal & Company of Wilmington, Delaware. Notify Trans-ocean Products Company, 80 Maiden Lane, New York.

"Our attention has been called to the fact that up to this time the parcel in question has not arrived, and consequently, we ask that you kindly trace same and advise us the outcome of the four (4) bales of goat skins in question.

"Thanking you in advance for your attention in the matter, we are dear sirs

"Yours truly,

"S. L. JONES & COMPANY,

"By D. R. NUNEZ.

"DRN:GMc."

That from time to time from the said seventh day of August, 1918, and until the fourth day of February, 1921, the said railroad company notified the plaintiff in writing that it was investigating the whereabouts of said goods, and from time to time during the period of said investigation, to wit, from on or about August 7, 1918, to on or about February 4, 1921, said railroad company requested indulgence and forbearance on plaintiff's part in the matter of pressing plaintiff's claim herein for the nondelivery of said goods, and in consideration of such forbearance said railroad company and said United States Railroad Administration promised the plaintiff to adjust and pay plaintiff's loss upon concluding such investigation, if said goods could not be found. That said investigation was not concluded until April 19, 1921. That on April 19, 1921, the defendants notified the plaintiff for the first time that they had concluded their said investigation, and then, for the first time, informed the plaintiff that said goods had been lost, and that plaintiff's claim of damage for such loss was by them rejected. That in the course of the said carriage of said goods the same were transferred without exception at Chicago, Illinois, on January 7, 1918.

That from the twenty-sixth day of December, 1917, to the twenty-eighth day of February, 1920, the railroad of the defendant Southern Pacific Company, and those of its connecting rail carriers, were operated under the direction and control of the United States through the United States Railroad Administration, and that ever since the said twenty-eighth day of February, 1920, the United States, and the said United States Railroad Administration, have been, and are now, represented by an agent designated by the President of the United States under the act of Congress known as the "Transportation Act of February 28th, 1920," and that said defendant James C. Davis, Esq., was at the time of the filing of the complaint herein, and ever since has been, and is now, such agent.

The court below found all of the foregoing facts to be true and in addition thereto found that said letter of August 7, 1918, was "in full compliance with the provisions of said Bill of Lading relative to the filing of a written claim in case of failure to make delivery, and at all times subsequent to its receipt it was treated and acted upon by the defendants, and each of them, as such a compliance, and at no time prior to the rejection of plaintiff's claim on the 19th day of April, 1921, was any objection made by the defendants, or either of them, to the sufficiency of said notice as a valid and effective claim under the provisions of said Bill of Lading. . . . That pursuant to said request, (contained in facts herein set forth) and in reliance upon said promises, the plaintiff deferred the filing of a suit to recover its damage for the loss of said goods until the said investigation was concluded."

"Finding 9.

"That the plaintiff did, within six months after the failure of the defendants to make delivery of said skins, make in writing to the originating carrier, a claim for the loss of said skins and for the failure to make delivery thereof, and that this action is not barred in consequence of any failure on plaintiff's part, or by any provision of the bill of lading or otherwise. That the defendants and each of them are estopped by their acquiescence and acts, and by their correspondence with and promises to the plaintiff, from asserting the insufficiency thereof as a claim under its said bill of lading."

"Finding 10.

"That this action was commenced in time, and is not barred by any provision of the bill of lading or otherwise. That the defendants, and each of them, are estopped by their acquiescence and acts, and by their correspondence with, and promises to, the plaintiff, from asserting that this action was not commenced in time, and are estopped from asserting that the cause is barred by any provision of the bill of lading, or otherwise."

These findings, the appellant contends, are not supported by the evidence, and that the decision is against law; that, on the contrary, the evidence clearly shows that the claim was not made within six months, and that suit was not instituted within two years and one day as provided in

the bill of lading, and that "the parties could not waive" the provisions of such bill of lading, nor could "the carrier, by its conduct, give the shipper the right" to ignore them. *Bronstein* v. *Payne*, 138 Md. 116 [113 Atl. 648], cited by appellants, sustains their contention that the provisions of the bill of lading cannot be waived, nor disregarded because of the acts of the carrier, and cites *Georgia, Florida & Alabama R. R. Co.* v. *Blish Milling Co.*, 241 U. S. 190 [60 L. Ed. 948, 36 Sup. Ct. Rep. 541], and *Texas & Pacific R. Co.* v. *Leatherwood*, 250 U. S. 478 [63 L. Ed. 1096, 39 Sup. Ct. Rep. 517], federal decisions, as authority upon said point. The first case of the two last-named sustains the rule as stated, but in the case of *Texas & Pacific R. Co.* v. *Leatherwood, supra,* a subsequent case, only four justices adhere to that rule, three dissenting, and two concurred in the judgment on grounds not discussed in the opinion, but specially declare that they are not prepared to assent to the broad proposition that the parties to a bill of lading cannot waive its terms, nor can the carrier, by its conduct, give the shipper the right to ignore them.

The letter in the case of *Bronstein* v. *Payne, supra,* which was held insufficient as a notice of claim, was in the following words and figures, to wit:

"Please find B/L and paid freight for nine compressed bales of rags, of which we only received eight. Kindly trace the bale that's short and acknowledge the receipt of this letter and enclosure."

*R. P. Hazard Co.* v. *Maine Central R. R. Co.*, 121 Me. 199 [116 Atl. 258], was a similar case of *Bronstein* v. *Payne, supra,* and followed that decision, and held the letter set out in the decision as insufficient as a notice of claim, and in each of said cases there was only a partial loss of shipment.

Replying to the first point that the notice of claim of loss was not given to the carrier within the time specified in the bill of lading, respondent makes the following points:

First: That the letter of August 7, 1918, was a claim, and was both timely and sufficient.

"That the purpose of the stipulation (in the bill of lading for a notice or claim of loss), is not to escape liability, but to facilitate prompt investigation." (*Georgia, Florida & Alabama R. R. Co.* v. *Blish Milling Co., supra.*) "Such notice

puts in permanent form the evidence of an intention to
claim damages; and will serve to call attention of the car-
rier to the condition of the freight and enable it to make
such investigation as the facts of the case require while
there is opportunity to do so." (*St. Louis, Iron Moun-
tain & Southern R. R.* v. *Starbird,* 243 U. S. 592 [61 L. Ed.
925, 37 Sup. Ct. Rep. 468].)

The letter of August 7th gives the name of the shipper,
a reasonably approximate date of shipment; the name of
the carrier; the kind of merchandise; the quantity; the
name of the party to whom shipped; the destination of the
shipment; the name of the party to notify; the address of
the party to be notified; the information that there had
been a failure to deliver; and that the entire shipment was
lost.

In *Georgia, Florida & Alabama R. R. Co.* v. *Blish Milling
Co., supra,* it was held that the following statement of facts
constituted a claim:

Railroad telegram to shipper: "Flour order notify
Draper Garrett Grocery Co refused account damage. Hold
at your risk and expense. Advise disposition."

Milling company replied: "Sending our representative
there. What is nature of damage?"

Reply: "Flour transferred en route. Slight damage by
water. Apparently rough handling. When will your rep-
resentative reach Bainbridge?"

The milling company replied that its man would be there
the next day. At the conference, the milling company
sent this telegram: "We will make claim against railroad
for entire contents of car at invoice price. Must refuse
shipment as we cannot handle."

And that said telegrams complied with bill of lading
that it must be in writing.

Respondent further contends that the evidence shows
that said letter of August 7, 1918, was treated by the car-
riers as a claim, as shown by stipulation of facts and the
letter of Mr. Fitch of April 19, 1921, and that no objection
was raised to it until the final rejection of the claim. In
said letter Mr. Fitch wrote:

"It had seemed to me that even if Section 3 of the bill
of lading requires filing of claim within six months after
a reasonable time for delivery of the property, nevertheless

the circumstances of this case warranted recognition of the claim. Upon receipt of your letter of August 7, 1918, carriers instituted investigation and developed that the shipment was transferred without exceptions at Chicago on January 7, 1918. I assumed that a reasonable time for delivery, therefore, would be say thirty days after January 7, 1918, and that inasmuch as your letter was mailed to the carriers on August 7, 1918, you had complied with the Statute.''

And in the stipulation of facts we have the following:

"On August 7, 1918, the plaintiff notified said R. R. Co. and said United States Railroad Administration, in writing, of the said failure on the part of said carrier to deliver the said goods at destination. . . . That from time to time thereafter, and until the 4th day of February, 1921, the said railroad company notified the plaintiff in writing that it was investigating the whereabouts of said goods, and from time to time during the period of said investigation, to-wit, from on or about August 7, 1918, to on or about February 4, 1921, said railroad company requested indulgence and forbearance on plaintiff's part in the matter of pressing plaintiff's claim herein for the non-delivery of said goods, and in consideration of such forbearance, said railroad company and said United States Railroad Administration promised the plaintiff to adjust and pay plaintiff's loss upon concluding such investigation, if said goods could not be found,'' and that these facts fully sustain all the findings of the court below.

Second: Respondent further claims that no notice of claim of loss was necessary because no evidence of what became of the shipment was given, and in the stipulation of facts it was expressly stipulated that said railroad company did not safely carry or deliver said bales, but wrongfully and negligently failed so to do, in this, that it failed and refused and has ever since failed and refused to deliver to plaintiff or to plaintiff's order, the said bales or any part thereof, and that their loss may have occurred because of damage in transit. See section 7976, Barnes' Federal Code, also the terms of the bill of lading.

And finally, that from on or about August 7, 1918, to on or about February 4, 1921, said railroad company requested indulgence and forbearance on plaintiff's part in the matter

of plaintiff's claim herein for nondelivery of said goods, and in consideration of said forbearance, said railroad company and said United States Railroad Administration promised the plaintiff to adjust and pay plaintiff's loss upon concluding such investigation, if said goods could not be found, and that appellant should be bound thereby.

[1] From the foregoing facts heretofore set out, it appears that said letter of August 7th was at all times treated and acted upon by the defendants as a sufficient notice of claim, and a full compliance with the bill of lading in that respect, and that the defendants and each of them should be and are estopped by their acquiescence and acts from asserting the insufficiency thereof as a claim, and that the finding of the court on that point is fully sustained by the evidence.

Respondent claims that the second defense, that the action was not filed or commenced in time, was expressly abandoned at the trial, and that the defendants are therefore precluded from raising it in this court.

At said trial, the following occurred:

"Mr. Dow: Your honor will note that in the correspondence they ask us for our indulgence. We will cite authorities that where a carrier asks the indulgence of a shipper, and such indulgence is granted, the carrier cannot afterwards come into court and say, 'Well, you relied upon our promises to pay, and you gave us indulgence, but you did not file your suit in time and you are out.'

"Mr. Ford: I am satisfied that you are right. I am satisfied we are not in a position to plead the statute of limitations, so we need not waste any time on that.

"The Court: Very well.

"Mr. Ford: The second defense, the one with reference to the action not being brought in time, is expressly waived. I am satisfied that, whether the letters in evidence did in fact cause the plaintiff to defer action beyond the period, I am satisfied they would be sufficient to do that. Any way, we stipulate that that defense is waived."

[2] The statute of limitations may be waived. (*Wells Fargo & Co.* v. *Enright,* 127 Cal. 669 [49 L. R. A. 647, 60 Pac. 439].)

When the creditor forbears to sue, upon the written request of the debtor, the debtor will be estopped to plead

the statute, and agreement to waive it is not against public policy. (*State Loan etc. Co.* v. *Cochran,* 130 Cal. 245 [60 Pac. 466, 600]; *Quanchi* v. *Ben Lomond Wine Co.,* 17 Cal. App. 565–569 [120 Pac. 427].)

[3] The above constituted an abandonment of the point that the suit was not filed in time, and disposes of that point against the appellant, and together with all the other evidence herein set out, sustains the finding of the court on that point.

[4] Appellant raises the further point that the Southern Pacific Company is not liable in any event if the cause of action arose during federal control.

The objection that the carrier company is not a proper party defendant is waived by failure to raise it in time. (*Wyman* v. *Atlantic Coast Line R. R. Co.,* 115 S. C. 138 [104 S. E. 542].)

The railroad company never raised the point at any time by demurrer or answer, or by motion to dismiss, and therefore waived said point.

"When any of the matters enumerated in Section 430 (grounds of demurrer) do not appear upon the face of the complaint, the objection may be taken by answer." (Sec. 433, Code Civ. Proc.)

"If no objection was taken, either by demurrer or answer, the defendant must be deemed to have waived the same. . . . " (Sec. 434, Code Civ. Proc.)

The record in the case at bar shows that the railroad company never raised the point at any time, either by demurrer or answer, or by motion to dismiss on the ground that it was not a proper party.

[5] Furthermore, the appellants have expressly stipulated that in consideration of the indulgence and forbearance that was given them by respondent, that they had promised to pay plaintiff's loss upon concluding such investigation if said goods could not be found, and this promise in itself should be sufficient under the evidence in the case to sustain the judgment.

For the foregoing reasons, the judgment should be affirmed, and it is so ordered.

Tyler, P. J., and St. Sure, J., concurred.